## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Gabriel Cassell,                                              Civil No. 15-2598 (PJS/JJK)

      Plaintiff,

v.                                                           **REPORT AND**
                                                             **RECOMMENDATION**

The County of Ramsey, et al.,

      Defendants.

---

Gabriel Cassell, 521 Beech Street, Pottstown, PA, Plaintiff *pro se.*

Robert B. Roche, Esq., Assistant County Attorney, Ramsey County Attorney's Office, St. Paul, MN, counsel for Defendants County of Ramsey and Ramsey County Attorney John Choi.

Jacob Campion, Esq., Assistant Attorney General, Minnesota Attorney General's Office, St. Paul, MN for Defendants Referee James Street and Judge Elena L. Ostby.

Marcus A. Jarvis, Esq., Marcus-Jarvis Law Limited, Brooklyn Park, MN, counsel for Defendant Marcus A. Jarvis.

Erbayne W. Jarvis, Esq., The Law Office Erbayne W. Jarvis, Brooklyn Park, MN, counsel for Defendant Erbayne W. Jarvis.

Barry A. O'Neil, Esq., and Michael N. Leonard, Esq., Lommen Abdo, P.A., counsel for Defendant La Fleur Law Office, PLLC.

---

JEFFREY J. KEYES, United States Magistrate Judge

### INTRODUCTION

The plaintiff Gabriel Cassell ("Cassell") brings this suit under 42 U.S.C.

§ 1983, alleging that the Defendants violated his constitutional rights.  The

Defendants have moved to dismiss this case on several grounds,[1] including lack

of jurisdiction, judicial and prosecutorial immunity, and failure to state a claim.

(Doc. No. 26, State Defs.' Mot. to Dismiss; Doc. No. 28, State Defs.' Mem. in

Supp. of Mot. to Dismiss; Doc. No. 33, Doc. No. 35, Erbayne W. Jarvis's Mot. to

Dismiss; Doc. No. 34, Erbayne W. Jarvis's Mem. in Supp. of Mot. to Dismiss;

Doc. No. 49, Marcus A. Jarvis's and Marcus Jarvis and Associates, LLC's Mot. to

Dismiss; Doc. No. 50, Marcus A. Jarvis's and Marcus Jarvis and Associates,

LLC's Mem. in Supp. of Mot. to Dismiss; Doc. No. 53, County Defs.' Mot. to

Dismiss; Doc. No. 55, County Defs.' Mem. in Supp. of Mot. to Dismiss;

Doc. No. 57, Def.'s Mot. J. Pleadings; Doc. No. 59; Def.'s Mem. in Supp. of Mot.

J. Pleadings.)  Although Cassell met and conferred with several defendants

about their motions to dismiss, Cassell did not submit a response to any of the

defendants' motions.  This Court held a hearing on the motions on September

16, 2015.  Cassell appeared at the motions hearing and opposed the motions to

dismiss his claims.

The district court referred the motions to dismiss and Cassell's motion for a

preliminary injunction to this Court, under 28 U.S.C. § 636 and Local Rule 72.1,

for a report and recommendation.  Based on the record before the Court, and for

the reasons discussed below, this Court recommends that the motions to dismiss

---

[1]      Defendant La Fleur Law Office, PLLC who filed a judgment on the
pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Doc. No.
57.)  The Court evaluates a motion under Rule 12(c) according to the same
standards as a motion to dismiss under Rule 12(b)(6).  *Clemons v. Crawford*, 585
F.3d 1119, 1124 (8th Cir. 2009).

be granted, that Defendant La Fleur Law Office, PLLC's motion  for judgment on the pleadings be granted, that Cassell's motion for a preliminary injunction be denied, and that this case be dismissed.

## BACKGROUND

### I.    Cassell's Complaint

Cassell's allegations in this pro se case can be summarized as follows. Cassell claims that eight defendants maliciously conspired to deprive him of his constitutional rights during state family court proceedings in which the state court designated Cassell as a frivolous litigant and required him to post a $10,000 surety bond before filing any future motions.  (Doc. No. 1, Compl.)  Cassell asserts: (1) that the State Defendants (Judge Elena L. Ostby and Referee James Street) deprived Cassell of his constitutional rights when designating Cassell as a frivolous litigant; (2) that the County Defendants (the County of Ramsey and John J. Choi (Ramsey County Attorney)) wrongfully conspired and supported the State Defendants' position; and (3) that the Private Parties (Marcus A. Jarvis; Marcus Jarvis and Associates, LLC; Erbayne W. Jarvis; and La Fleur Law Office, PLLC) wrongfully conspired with the State Defendants in the designation of Cassell as a frivolous litigant.  (*Id.*)  Cassell alleges that designating him as a frivolous litigant is unconstitutional under the Eighth Amendment because imposing upon him a $10,000 pre-filing bond requirement is an excessive fine. (*Id.*)  Cassell further asserts that all the Defendants' actions allegedly caused him

and his family "unspeakable suffering" and forced him "into a precarious social, economic and emotional condition."  (*Id.*)

Cassell asserts three causes of actions against Defendants.  The first cause of action is "Violation of 42 U.S.C. § 1983; Violation of the Eighth and Fourteenth Amendments to the United States Constitution and Minnesota Law."[2] (*Id.*)  The second cause of action is "Intentional Infliction of Emotional Distress and Conspiracy in Violation of 42 U.S.C. § 1983."[3]  (*Id.*)  The third cause of action is "Wrongful Dinial [sic] of Access to the Court and Conspiracy in Violation of 42 U.S.C. § 1983 and the Fourteenth Amendment."[4]  (*Id.*)  For these allegations, Cassell seeks an "issuance of an Order and Permanent Injunction that: Ramsey County immediately cease enforcements of ALL orders and judgements [sic] issued against Plaintiff, including income withholdings, wage garnishment, federal and state refunds intercept, bank levy, negative credit bureau reporting, travel restrictions, employment restrictions;" an order finding "ALL judgements

---

[2]     Cassell asserts the first cause of action against the following Defendants: Judge Elena L. Ostby, Referee James Street, Marcus Jarvis, Erbayne Jarvis, John Choi, and Julie La Fleur (Julie La Fleur is not a party to this suit).

[3]     Cassell asserts the second cause of action against the following Defendants: Judge Elena L. Ostby, Referee James Street, Marcus Jarvis, John Choi, and Julie La Fleur (Julie La Fleur is not a party to this suit) in their individual and official capacities and Ramsey County.

[4]     Cassell asserts the third cause of action against the following Defendants: Ramsey County, Judge Elena L. Ostby, Referee James Street, Marcus Jarvis, John Choi, and Julie La Fleur (Julie La Fleur is not a party to this suit). Defendants Marcus Jarvis and Associates, LLC and La Fleur Law Office, PLLC are not listed in Cassell's causes of action.

[sic] and orders issued in Ramsey County against Plaintiff to be illegal, void and unconstitutional;" an award of damages of $10,000,000.00, and any other additional damages or relief the Court deems fair and proper.  (Compl. ¶ 55.)

## II.   Procedural Posture

Cassell commenced this action on June 1, 2015.  (Compl.)  The State Defendants filed their Motion to Dismiss on July 27, 2015. (Doc. No. 26.)  The County Defendants filed their Motion to Dismiss on August 5, 2015.  (Doc. No. 53.)  Defendant Erbayne W. Jarvis filed his Motions to Dismiss on July 30, 2015.  (Doc. No. 33; Doc. No. 35.)[5]  Defendants Marcus A. Jarvis and Marcus Jarvis and Associates, LLC, filed their Motion to Dismiss on August 5, 2015. (Doc. No. 49.)  Defendant La Fleur Law Office, PLLC filed its Motion for Judgment on the Pleadings on August 5, 2015.  (Doc. No. 57.)  Cassell did not submit a written response to these motions.  However, as noted above, Cassell appeared at the hearing and argued that his case should be allowed to go forward and the Defendants' motions should be denied.

## DISCUSSION

## I.   PUBLIC PARTY DEFENDANTS

### A.   State Defendants' Motion to Dismiss

Cassell sued Judge Elena L. Ostby and Referee James Street (collectively, the "State Defendants") for damages and injunctive relief under 42 U.S.C. § 1983 for allegedly depriving Cassell of his constitutional rights.

---

[5]   Document Numbers 33 and 35 are duplicates.

(Compl.)  The State Defendants moved to dismiss Cassell's Complaint on the following grounds: the *Rooker-Feldman* doctrine; judicial immunity; the Eleventh Amendment; Section 1983 does not authorize a claim against the State Defendants in their official capacities, nor does it allow for injunctive relief against judicial officers; and the State Defendants in their individual capacities cannot provide the injunctive relief sought by Cassell.  (Doc. No. 28, State Defs.' Mem. Supp. Mot. to Dismiss.)

### 1. *Rooker-Feldman*[6]

### i. Legal Standard

Under Rule 12(b)(1), a party may move to dismiss a claim against it for lack of subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  This motion may include a challenge to a complaint on its face or a "factual attack" based on matters outside the pleadings.  *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990).  In a challenge to the face of the complaint, the Court reviews only the pleadings, and the nonmoving party receives the same protections as it would in defending a motion for failure to state a claim, namely that the factual allegations in the complaint are taken as true for purposes of the motion.  *Id.*

Under the *Rooker-Feldman* doctrine, federal district courts lack subject-matter jurisdiction to adjudicate claims that seek to review state court judgments. *Skit Int'l, Ltd. v. DAC Technologies of Arkansas, Inc.*, 487 F.3d 1154, 1157 (8th

---

[6]     The *Rooker-Feldman* doctrine takes its names from two Supreme Court cases: *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).

Cir. 2007). "[I]f a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker-Feldman* bars subject matter jurisdiction in federal district court." *Riehm v. Engelking*, 538 F.3d 952, 965 (8th Cir. 2008). For the federal district court to be divested of subject-matter jurisdiction under *Rooker-Feldman*, the federal plaintiff's claim need not be a straightforward appeal of an adverse state-court judgment; the doctrine also bars subject-matter jurisdiction where the plaintiff's claims seek to indirectly undermine state court decisions as the two are "inextricably intertwined." *See Lemonds v. St. Louis County*, 222 F.3d 488, 492– 93 (8th Cir. 2000). Federal claims are inextricably intertwined with a state court judgment if they "succeed[] only to the extent that the state court wrongly decided the issue before it." *Id.* at 493 (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987) (Marshall, J., concurring)).

However, the doctrine does not divest the federal district courts of jurisdiction whenever the plaintiff failed to prevail in a state-court action prior to bringing a federal lawsuit. As the Eighth Circuit Court of Appeals has explained:

> A district court is not deprived of jurisdiction over every case in which a plaintiff seeks a result different from the one it obtained in state court. . . . Rather, *Rooker-Feldman* is implicated in that subset of cases where the losing party in a state court action subsequently complains about that judgment and seeks review and rejection of it.

*Skit Int'l*, 487 F.3d at 1157.

Thus, the doctrine is a narrow one that does not "override or supplant preclusion," and allows independent claims to proceed, even those that reject a

state court's previous decision.  *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

### ii.    Analysis

Cassell asserts that the State Defendants deprived him of his constitutional rights. (Compl. ¶ 3.)  The State Defendants designated Cassell as a frivolous litigant in December 2012, and imposed upon him a requirement that he post a $10,000 bond before filing any future motions in his family court case.  (Doc. No. 37, Order Designating Resp't Frivolous Litigant, Ex. 3.)  Cassell appealed that decision to the Minnesota Court of Appeals, which, in September 2013, affirmed the designation of Cassell as a frivolous litigant and the imposition of the cost bond.  *Cassell v. Cassell*, No. A13-0316, 2013 WL 5420303 (Minn. Ct. App. Sept. 30, 2013).  In December 2013, the Minnesota Supreme Court denied review of the court of appeals's decision.  *See id.*[7]  Cassell then filed suit in federal court on June 1, 2015, regarding the State Defendants' order.

Cassell asserts that, collectively, the Defendants violated Cassell's constitutional rights when the State Defendants' designated Cassell as a frivolous litigant.  Cassell asserts this action arises under 42 U.S.C. § 1983, and that this Court has jurisdiction to adjudicate this claim under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a).  (Compl. ¶¶ 22–23.)  Cassell is incorrect.  The *Rooker-*

---

[7]    In evaluating the motions to dismiss, the Court can consider the decisions of the Minnesota state courts as matters necessarily embraced by Cassell's Complaint. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)

*Feldman* doctrine specifically bars federal courts from adjudicating claims, such as those asserted against the State Defendants, which request federal courts to overturn state court judgments. *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).

In *Rooker*, the plaintiffs requested that the federal district court find the state court's judgment null and void.  263 U.S. at 414.  The federal district court would not adjudicate the plaintiffs' request, as it claimed to not have jurisdiction over the matter.  *Id.* at 415.  The United States Supreme Court held that the federal district court was correct and that "the suit [was] so plainly not within the District Court's jurisdiction as defined by Congress," because federal district courts only have original jurisdiction, not appellate.  *Id.* at 415–16.  As the plaintiffs essentially requested appellate review by the district court, the district court correctly held it did not have jurisdiction to review the judgment of the state courts.

In *Feldman*, the plaintiffs applied for admission to the District of Colombia's bar examination without graduating from an ABA accredited law school. 460 U.S. at 466–73.  The District of Colombia Court of Appeals denied the requests to waive this requirement for the plaintiffs.  *Id.* at 479.  The Supreme Court concluded that the plaintiffs could not seek redress for that decision in a federal district court, stating that, "a United States District Court has no authority to review final judgments of a state court in judicial proceedings."  *Id.* at 482; *see also id.* at 486–87 ("These allegations are inextricably intertwined with the District

of Columbia Court of Appeals' decisions, in judicial proceedings, to deny the respondents' petitions. The District Court, therefore, does not have jurisdiction over these elements of the respondents' complaints."). Thus, the United States District Court did not have authority to adjudicate an issue concerning the state courts' judgment.

Like the plaintiffs in *Rooker*, Cassell has requested this Court review the judgment by the State Defendants designating Cassell a frivolous litigant and declare that order null and void. Under *Rooker*, such an action is a prohibited appeal of a state court decision. *Rooker*, 263 U.S. at 415–16. Like the plaintiffs in *Feldman*, Cassell's allegations that the State Defendants deprived Cassell of his constitutional rights by deeming him a frivolous litigant are so inextricably intertwined with the state courts' decisions that this Court does not have jurisdiction over Cassell's claims, as they have already been adjudicated by the Minnesota state courts. 460 U.S. at 486–87. Thus, under the *Rooker-Feldman* doctrine, this Court does not have the jurisdiction to adjudicate Cassell's claims against the State Defendants. Accordingly, this Court recommends that the State Defendants' motion to dismiss be granted and Cassell's Complaint be dismissed.

## 2.    Judicial Immunity

Even if this Court were to find that the *Rooker-Feldman* doctrine does not apply to Cassell's claim that the State Defendants deprived him of his constitutional rights in designating him a frivolous litigant, judicial immunity would

bar Cassell's claims against the State Defendants, Judge Ostby and Referee Street.  "Even if a judge is alleged to act maliciously or corruptly, he is protected from claims for money damages [through judicial immunity].  Only if a judge acts in 'the clear absence of all jurisdiction over the subject-matter' can he be liable." *P.G. v. Ramsey Cty.*, 141 F. Supp. 2d 1220, 1231 (D. Minn. 2001) (citations omitted).  Judicial immunity also applies to referees.  "The desirability of such freedom of judicial action applies equally to court-appointed referees and receivers, and brings them within the cloak of judicial immunity."  *Drexler v. Walters*, 290 F. Supp. 150, 154 (D. Minn. 1968).  This immunity applies to a judge's participation in adjudicating controversial issues, a judge's excess use of authority, and even decisions a judge makes in error.  *See Mireles v. Waco*, 502 U.S. 9, 13 (1991) (citing *Stump v. Sparkman*, 435 U.S. 349, 356 (1978)); *see also Stump*, 435 U.S. at 364.

Very few circumstances exist where a judge would not receive judicial immunity.  *Mireles* offers two circumstances when judicial immunity does not apply: "[1] a judge is not immune from liability for nonjudicial actions" or "[2] for actions, though judicial in nature, taken in the complete absence of all jurisdiction."  502 U.S. at 11–12.  The Supreme Court held that judicial immunity barred liability against the judge, and that neither immunity exception applied, when the judge allegedly ordered police officers to use excessive force to bring the plaintiff into his courtroom.  *Id.* at 10, 13.  To determine that the first judicial

immunity exception did not apply, *Mireles* compared its facts to *Forrester v. White.  Id.* at 11–13.

In *Forrester v. White*, the judge terminated a female probation officer. 484 U.S. 219*,* 221 (1988).  The female probation officer claimed the judge terminated her because of her gender.  *See id.*  Thus, the probation officer sued the judge for violating Title VII of the Civil Rights Act of 1964, 78 Statute 253, as amended, 42 U.S.C. § 2000e *et seq. Id.*  Ultimately, the Supreme Court held that terminating an employee is an administrative function and not a judicial function; therefore, judicial immunity did not apply.  *Id.* at 229–30.  Contrary to *Forrester*, *Mireles* found judicial immunity applied because "[a] judge's direction to court officers to bring a person who is in the courthouse before him is a function normally performed by a judge."  502 U.S. at 12.

To determine that the second judicial immunity exception did not apply to *Mireles*, *Mireles* compared its facts to *Stump.  See id.*  In *Stump*, a minor's mother requested the judge approve a sterilization procedure on her minor daughter.  435 U.S. 349, 351 (1978).  The judge approved the mother's request and the minor daughter unknowingly underwent a sterilization medical procedure. *Id.* at 352–53.  Later, when the daughter and her husband (the plaintiffs) were struggling to become pregnant, the daughter discovered she had been sterilized. *Id.* at 353.  The plaintiffs sued the judge, among others, for violation of her constitutional rights.  *Id.* at 353–54.  Whether judicial immunity applied to the judge hinged on "whether at the time [the judge] took the challenged action he

12

had jurisdiction over the subject matter." *Id.* at 356.  The Supreme Court held

that there was not a statute or case law prohibiting the judge from making this

decision.  *Id.* at 358.  Thus, the judge had jurisdiction over the subject matter and

judicial immunity applied—no matter the consequences for the plaintiffs.  *Id.* at

358–60, 63.  *Mireles* held that the judge may have acted in excess of his

authority, but that the action was not made in complete absence of the judge's

jurisdiction.  502 U.S. at 13.

Just as in *Mireles*, Cassell's claims against the judicial officers in this

case—the State Defendants—are barred by judicial immunity.  In this case, the

State Defendants designated Cassell a frivolous litigant in an order.  (Doc.

No. 37, Order Designating Resp't Frivolous Litigant, Ex. 3.)  Issuing an order is a

judicial function, not an administrative function.  "The relevant cases demonstrate

that the factors determining whether an act by a judge is a 'judicial' one relate to

the nature of the act itself, *i.e.*, whether it is a function normally performed by a

judge, and to the expectations of the parties, *i.e.*, whether they dealt with the

judge in his judicial capacity."  *Stump*, 435 U.S. at 362.  Issuing an order is a

function normally performed by a judge and is a function that the parties deal with

the judge in the judge's judicial capacity.  Hence, issuing an order is a judicial

function and the first judicial immunity exception does not apply.

The State Defendants imposed a restriction on Cassell to either post a

$10,000 bond or retain a licensed Minnesota attorney prior to filing any motions

relating to his family law case.  There is no statute or case law prohibiting the

13

State Defendants from making such a legal determination, even if Cassell does
not agree with the decision's consequences.  *See Stump*, 435 U.S. at 363
("Disagreement with [ ] action taken by the judge . . . does not justify depriving
that judge of [ ] immunity. . . . [Judicial immunity] is thought to be in the best
interests of '. . . justice . . . [so that] a judicial officer, in exercising . . . authority
. . . [may] be free to act upon his own convictions, without apprehension of
personal consequences.'").  Hence, the State Defendants had jurisdiction over
the action challenged by Cassell, so the second exception to judicial immunity
does not apply.

Cassell claims his civil and constitutional rights were violated when the
State Defendants designated Cassell a frivolous litigant, in response to excessive
claims filed by Cassell relating to disputes with his ex-wife.  (Doc. No. 28,
State Defs.' Mem. Supp. Mot. to Dismiss; *see also* Doc. No. 1, Pl.'s Compl. ¶ 4.)
The State Defendants designated Cassell as a frivolous litigant under state law—
an action within State Defendants judicial capacity as state judicial officers.
(Doc. No. 28, State Defs.' Mem. Supp. Mot. to Dismiss.)  Even if Cassell believes
the State Defendants' judicial actions were made in error, judicial immunity
applies.  *See Stump*, 435 U.S. at 356–57 ("A judge will not be deprived of
immunity because the action he took was in error, was done maliciously, or was
in excess of his authority; rather, he will be subject to liability only when he has
acted in the 'clear absence of all jurisdiction.'"); *see also id.* at 359 ("A judge is
absolutely immune from liability for his judicial acts even if his exercise of

14

authority is flawed by the commission of grave procedural errors."). It is best for

the public for judges to adjudicate based on the merits and not based on

intimidation. *See Forrester*, 484 U.S. at 226–27; *see also Stump*, 435 U.S. at

355 ("As early as 1872, the Court recognized that it was 'a general principle of

the highest importance . . . that a judicial officer, in exercising the authority

vested in him, [should] be free to act upon his own convictions, without

apprehension of personal consequences to himself.'" (citing *Bradley v. Fisher*, 80

U.S. 335, 347 (1871))). Because judicial immunity applies, this Court

recommends that the State Defendants' motion be granted and Cassell's claims

against the State Defendants be dismissed.

### 3. Eleventh Amendment Bars Plaintiff's Federal and State-law Damages Claims against the State Defendants in their Official Capacities

In addition, this Court also concludes that the Eleventh Amendment bars

Cassell's claims for damages against the State Defendants in their official

capacities. Unless the State of Minnesota waives its Eleventh Amendment

immunity or Congress revokes Minnesota's immunity by an express statutory

provision, the State of Minnesota is immune from suit, from both federal and

state-law claims, in federal court. U.S. Const. amend. XI; *see Will v. Mich. Dep't

of State Police*, 491 U.S. 58, 66 (1989); *see also Pennhurst State Sch. & Hosp.

v. Halderman*, 465 U.S. 89, 98100 (1984). Being judicial officers, the State

Defendants are Minnesota state officials. *See* Minn. Const. art. VI. Suing a state

official acting in her official capacity is synonymous with suing the State of

15

Minnesota.  *See Morstad v. Dep't of Corrs. & Rehab.*, 147 F.3d 741, 743–44 (8th

Cir. 1998) (finding that state employees sued in official capacities are not liable

for damages under § 1983).

Since the State of Minnesota is immune from a suit for damages in federal

court under the Eleventh Amendment, the State Defendants, in their official

capacities, are immune from suit for damages in federal court.  *See* U.S. Const.

amend. XI.  For these reasons, this Court lacks jurisdiction over Cassell's claims

for damages against the State Defendants in their official capacities.  *Seminole*

*Tribe of Fla. v. Florida*, 517 U.S. 44, 64–65, 72–73 (1996) (finding that when a

lawsuit is barred by the Eleventh Amendment, the case must be dismissed for

lack of subject matter jurisdiction).[8]

### B.   County Defendants' Motion to Dismiss

Cassell sued John Choi, Ramsey County Attorney, and Ramsey County

(collectively, the "County Defendants") for damages and injunctive relief under 42

U.S.C. § 1983.  (Compl. ¶ 3.)  The County Defendants move to dismiss Cassell's

claims on the following grounds: the *Rooker-Feldman* doctrine; prosecutorial

---

[8]     The State Defendants also argue that the Eleventh Amendment bars
Cassell's state-law claims for injunctive relief against the State Defendants in
their official capacities, that Cassell cannot bring section 1983 claims against the
State Defendants in their official capacities because the state is not a "person,"
that injunctive relief against the State Defendants is unavailable under section
1983, and that Cassell's claims for injunctive relief against the State Defendants
in their individual capacities are meritless.  Since the Court has recommended
that Cassell's claims be dismissed on other grounds, the Court does not address
these alternative arguments.

immunity; and failure to state a claim upon which relief may be granted.  (Doc.

No. 55, County Defs.' Mem. Supp. Mot. to Dismiss.)

### 1.    *Rooker-Feldman* Analysis

Cassell alleged that the County Defendants are part of a conspiracy to

deprive Cassell of his constitutional rights by "conspir[ing] and enter[ing] into

express and/or implied agreements, understanding, or meetings of the minds . . .

depriv[ing] Plaintiff of his constitutional rights and privileges under Minnesota law

by imposing a civil administrative fine of $10,000 upon Plaintiff as precondition

for filing any and all motions in Ramsey County family court." (Compl. ¶ 40.)  The

County Defendants, like the State Defendants, argue that Cassell's claims are

barred by the *Rooker-Feldman* doctrine.  For the same reasons that this Court

concludes above that Cassell's claims against the State Defendants are barred

by the *Rooker-Feldman*, this Court also concludes that the County Defendants'

motion should be granted under the *Rooker-Feldman* doctrine.  Namely, by

asking this Court to issue an injunction that renders the order designating Cassell

a frivolous litigant and imposing a $10,000 surety bond on him, Cassell is

essentially filing a direct appeal of the state court proceedings in which he lost.

Such an action is squarely within the *Rooker-Feldman* doctrine and Cassell's

claims against the County Defendants should be dismissed.[9]

---

[9]     The County Defendants argue that Cassell's claims against Choi are
barred under the doctrine of prosecutorial immunity and that Cassell cannot
maintain his claims against Ramsey County.  Because Cassell's claims against
the County Defendants essentially seek appellate review of the state judgment in

**C.    Cassell's Claims Against the State and County Defendants for Intentional Infliction of Emotional Distress**

Cassell claims that the State Defendants and the County Defendants intentionally inflicted emotional distress upon him by imposing the $10,000 surety bond to file a motion in Ramsey County District Court.  (Doc. No. 1, Pl.'s Comp. ¶¶ 44–49.)  "A claim for intentional infliction of emotional distress requires that [the conduct] was: (1) extreme and outrageous; (2) intentional and reckless; (3) that it caused emotional distress; and (4) was so severe that no reasonable person could be expected to endure it."  *Heimbach v. Riedman Corp.*, 175 F. Supp. 2d 1167, 1179 (D. Minn. 2001) (citing *Hubbard v. United Press International, Inc.,* 330 N.W.2d 428, 439–40 (Minn. 1983)).

To the extent that any such claim is not barred by the *Rooker-Feldman* doctrine, judicial immunity, the Eleventh Amendment sovereign immunity, or prosecutorial immunity, this Court concludes that Cassell has failed to state a claim for intentional infliction of emotional distress.  Cassell did not plead sufficient facts showing that the State Defendants' and the County Defendants' conduct was extreme and outrageous, intentional and reckless, caused emotional distress, *and* that any such distress was so severe that no reasonable person could be expected to endure it.  *See id.*  Thus, to the extent other

---

Cassell's family court proceeding and are therefore barred by the *Rooker-Feldman* doctrine, the Court need not consider these alternative arguments.

applicable legal bases do not bar Cassell's claim for intentional infliction of emotional distress, that claim should be dismissed pursuant to Rule 12(b)(6).

### D.    Cassell's Eighth Amendment Excessive Fine Claim

Cassell claims that Defendants violated his Eighth Amendment rights by requiring him to pay a $10,000 surety bond to file a motion (in lieu of him opting not to retain a licensed, Minnesota attorney).  (Compl. ¶ 38.)  The Eighth Amendment states, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII. Under the *Rooker-Feldman* doctrine, this Court cannot adjudicate this claim as this Court does not have jurisdiction to hear this issue.  Cassell had the opportunity to bring any such claim during his state appellate proceedings, but apparently chose not to do so.  He cannot now use 42 U.S.C. § 1983, or any other avenue, to receive the equivalent of another round of appellate review of this newly articulated claim in federal district court.  Thus, his Eighth Amendment excessive fine claim should be dismissed.

## II.    Cassell's Claims Against the Private Party Defendants

In their motions to dismiss, the Private Party Defendants[10] raise several grounds on which this case should be dismissed.  First, the Private Party Defendants argue that this Court lacks subject matter jurisdiction pursuant to the *Rooker-Feldman* and collateral attack doctrines.  Second, they contend that

---

[10]    The Private Party Defendants are Marcus A. Jarvis; Marcus Jarvis and Associates, LLC; Erbayne W. Jarvis; La Fleur Law Office, PLLC.

Cassell's complaint fails to state a claim upon which relief can be granted under 42 U.S.C § 1983.  For the reasons set forth below, this Court recommends that the Private Party Defendants' motions to dismiss be granted, and all claims against the Private Party Defendants be dismissed.

### A.    Subject Matter Jurisdiction

Private Party Defendant, La Fleur Law Office, PLLC, raises a challenge to this Court's subject matter jurisdiction under the *Rooker-Feldman* and collateral attack doctrines.  (*See* Doc. No. 59, La Fleur Law Office Mem. 4–6.)  Under the *Rooker-Feldman* doctrine, federal district courts lack subject-matter jurisdiction to adjudicate claims that seek to review state court judgments.  *Skit Int'l, Ltd. v. DAC Technologies of Arkansas*, Inc., 487 F.3d 1154, 1157 (8th Cir. 2007).  A collateral attack occurs when a party seeks to circumvent an earlier ruling of one court by filing a subsequent action in another court.  *Popp Telcom v. Am. Sharecom, Inc.*, 210 F.3d 928 (8th Cir. 2000).

Having reviewed Cassell's complaint, the lack of factual allegations against the La Fleur Law Office makes analysis of this Court's subject matter jurisdiction over Cassell's claims against this entity challenging at best.  Cassell alleges virtually no specific allegations regarding the Private Party Defendant's conduct and instead makes repeated conclusory allegations of their wrongdoing.  In his complaint, Cassell requests an injunction barring enforcement of all orders of the Ramsey County district court in his family court proceeding and requests damages. (Compl. ¶ 55 a–f.)  It is not clear how the injunction that Cassell seeks

20

would be relief that could be awarded against La Fleur Law Office or any of the

other Private Party Defendants. Further, awarding damages against the Private

Party Defendants for allegedly conspiring to deprive Cassell of his constitutional

rights might or might not be barred by the *Rooker-Feldman* doctrine. Given the

complete dearth of factual allegations in Cassell's complaint against the Private

Party Defendants, this Court simply cannot say with any certainty whether the

*Rooker-Feldman* doctrine bars Cassell's claims against them.

This Court will therefore analyze the Private Party Defendant's motion for

failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil

Procedure.

### B.    Private Party Defendants' Motions to Dismiss

#### 1.    Standard of Review

In reviewing a complaint under a Rule 12(b)(6) motion to dismiss, the

Court must accept as true all factual allegations in the complaint and view them

in the light most favorable to the plaintiff.  *Schaller Tel. Co. v. Golden Sky Sys.,*

*Inc.*, 298 F.3d 736, 740 (8th Cir. 2002).  However, the court need not accept

conclusory allegations as true.  *Hanten v. Sch. Dist. of Riverview Gardens*, 183

F.3d 799, 805 (8th Cir. 1999).  The court also does not need to accept as true

legal conclusions drawn by the pleader from the facts alleged.  *Westcott v. City of*

*Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

To survive a motion to dismiss, a complaint must contain "enough facts to

state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007).  The complaint must contain facts with enough
specificity "to raise a right to relief above the speculative level."  *Id.* at 555.  This
standard "calls for enough fact[s] to raise a reasonable expectation that discovery
will reveal evidence of [the claim]."  *Id.* at 545.

Additionally, pro se complaints are held to less stringent standards than
pleadings submitted by represented parties.  *See Haines v. Kerner*, 404 U.S.
519, 520 (1972) (per curiam).  However, even a pro se complaint must allege
facts and not just bare, unsupported, legal conclusions.  *Martin v. Sargent*, 780
F.2d 1334, 1337 (8th Cir. 1985) ("Although it is to be liberally construed, a *pro se*
[sic] complaint must contain specific facts supporting its conclusions.").

## 2.    Section 1983 Analysis

The Private Party Defendants contend that Cassell has failed to allege
sufficient facts to support a 42 U.S.C. § 1983 claim upon which relief can be
granted.  (Doc. No. 33, Doc. No. 35, Erbayne W. Jarvis's Mots. to Dismiss;
Doc. No. 34, Erbayne W. Jarvis's Mem. in Supp. of Mot. to Dismiss; Doc. No. 49,
Marcus A. Jarvis's and Marcus Jarvis and Associates, LLC's Mot. to Dismiss;
Doc. No. 50, Marcus A. Jarvis's and Marcus Jarvis and Associates, LLC's Mem.
in Supp. of Mot. to Dismiss; Doc No. 57, La Fleur Law Office, PLLC's Mot. for J.
on Pleadings; Doc. No. 59, La Fleur Law Office, PLLC's Mem. in Supp. of J. on
Pleadings.)  The Private Party Defendants assert that Cassell has failed to put
forth factual allegations that the Private Party Defendants were acting "under the

color of law." *See Carlson v. Roetzel*, 552 F.3d 648, 650 (8th Cir. 1997) (quoting 42 U.S.C. § 1983).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  Importantly, "[o]nly state actors can be held liable under Section 1983." *Carlson,* 552 F.3d at 650.  In order to hold a private party liable under § 1983, the plaintiff must allege "that there was a mutual understanding, or a meeting of the minds, between the private party and the state actor." *Miller v. Compton*, 122 F.3d 1094, 1098 (8th Cir. 1997).  The mutual understanding or conspiracy between the private party and the state actor must be pleaded with "specificity and factual support." *Deck v. Leftridge*, 771 F.2d 1168, 1170 (8th Cir. 1985).

The Eighth Circuit has held that a private party's actions in representing a client, bringing a cause of action, filing motions and memoranda, and offering evidence do not show that a private party acted under color of law or engaged in a state action for the purposes of a § 1983 claim. *Holbird v. Armstrong-Wright*, 949 F.2d 1019, 1020 (8th Cir. 1991) ("The conduct of counsel . . . in representing clients, does not constitute action under color of state law for purposes of section 1983 violations."); *Carlson*, 552 F.3d at 650–51.  Additionally, a private party providing information to a government agency, does not constitute state action for § 1983 purposes.  *Miller*, 122 F.3d at 1098.  Further, evidence of an

23

unfavorable judicial ruling falls short of suggesting any "meeting of the minds" between the state and the private attorney—as is required. *Deck*, 771 F.2d at 1170; *Dotlich v. Kane*, 497 F.2d 390, 391 (8th Cir. 1974). All of the aforementioned reasons have led the Eighth Circuit to affirm the dismissal of § 1983 claims against private attorneys in family law matters. *See Harley v. Oliver*, 539 F.2d 1143, 1145–46 (8th Cir. 1976) (dismissing § 1983 claims brought by mother against her ex-husband and his counsel, arising from the ex-husband taking custody of the couple's son where neither the ex-husband nor his counsel acted under color of state law).

As previously mentioned, the mutual understanding or conspiracy between the private party and the state actor must be pleaded with "specificity and factual support." *Deck*, 771 F.2d at 1170. Even with the liberal reading that is afforded to pro se complaints, it is difficult to identify *any* factual allegations concerning the Private Party Defendants in Cassell's Complaint. Any allegations against the Private Party Defendants are blanket statements about the deprivation of Plaintiff's Eighth and Fourteenth Amendment rights. (*See* Compl. ¶¶ 26–38.) Cassell claims that his constitutional rights were violated through the Ramsey County District Court's designation of him as a frivolous litigant. (*Id.*) Cassell also objects to the state court's requirement of a $10,000 surety bond or that he obtain licensed, Minnesota counsel in further litigation concerning his frivolous litigant status. (*Id.*) The Private Party Defendants' actions in the state courts' designation of Cassell as a frivolous litigant would have been in filing briefs,

24

memoranda, and representing their client in the family court proceeding.  Cassell alleges nothing other than conclusory statements about what the Private Party Defendants did that supposedly violated his constitutional rights.

Even if Cassell had alleged facts about the type of behavior he appears to complain that the Private Party Defendants engaged in that forms the basis for his § 1983 claims (i.e., litigating against him in state court), such allegations would not adequately allege that any of the Private Party Defendants were state actors for purposes of § 1983. The Court concludes that none of Cassell's allegations have risen to the necessary level of sufficient specificity and factual support to state a claim that the Private Party Defendants were acting as state actors in this case.  All of Cassell's allegations of constitutional violations against the Private Party Defendants occurred within the context of the child support and custody disputes.  As stated, a private party's conduct in representing a client does not show a state action for the purposes of a § 1983 claim. *Holbird*, 949 F.2d at 1020.

For these reasons, this Court recommends that the § 1983 claims against the Private Party Defendants be dismissed.

## C.    Additional Claims Against the Private Party Defendants

Cassell has also alleged that the Private Party Defendants have intentionally inflicted emotional distress upon him, engaged in conspiracy, and engaged in a wrongful denial of access to the court. (*See* Compl. 10–11.)  This Court has taken a careful review of Cassell's Complaint to search for factual

allegations that could form the basis for a plausible claim under any identified cause of action and concludes that Cassell has failed to plead any facts relating to the Private Party Defendants' conduct that would do so.   Therefore, these claims should be dismissed.

## III.   Defendant Erbayne Jarvis's Motion for Rule 11 Sanctions

Defendant Erbayne Jarvis has asked this Court to issue an order barring Cassell from filing future lawsuits relating to Cassell's state family law matter unless "either 1) the pleadings related to any such lawsuit are signed, pursuant to Fed. R. Civ. P. 11, by an attorney admitted to this Court or (2) a judicial officer of this District has authorized the filing of such pleadings in advance." (Doc. No. 74, Def.'s Mot. for Sanctions; Doc. No. 76, Def.'s Mem. in Supp. of Mot. for Sanctions.)[11]

Rule 11 of the Federal Rules of Civil Procedure permits sanctions where Rule 11(b) has been violated.   *See* Fed. R. Civ. P. 11(c).   Rule 11(b) requires that the "attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances."   Fed. R. Civ. P. 11(b).   To determine whether there has been a Rule 11 violation, the Court will consider whether the party signing the pleading,

---

[11]   Rule 11 requires that a party moving for sanctions against an attorney or an unrepresented party make a separate motion seeking such relief.   Fed. R. Civ. P. 11(c)(2).   Erbayne Jarvis complied with this requirement by filing his Rule 11 motion separately from any other motion.   (Doc. No. 74).   Erbayne Jarvis also complied with Rule 11's 21-day safe harbor provision, Fed. R. Civ. P. 11(c)(2), because the motion was served under Rule 5 on July 14, 2015. (Doc. No. 78), and the motion was later filed on Aug. 12, 2015.

conducted a reasonable inquiry prior to filing it.  *See id.*  Notably, "the central purpose of Rule 11 is to deter baseless filings in district court."  *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).

This Court notes that a pro se litigant has a right of access to the courts, but that right does not ensure an unrestricted opportunity to file frivolous, malicious, or abusive lawsuits.  *See In re Tyler*, 839 F.2d 1290, 1292 (8th Cir. 1988).  "Federal courts have a clear obligation to exercise their authority to protect litigants from such behavior."  *Id.* at 1293.  A frivolous suit is one which has "no legal basis, often filed to harass or extort money from the defendant." Frivolous Suit, *Black's Law Dictionary* (10th ed. 2014).  When a litigant has frivolously litigated the same issues multiple times before, an injunction can be the appropriate remedy.  *See Zhang v. Equity Office Props.* Tr., No. 06-2265 (MJD/AJB), 2007 WL 26324, 34 at *11 (D. Minn. Jan. 3, 2007) (citing *Sibley v. James*, Nos. 02-2047, 02-2022, 2002 WL 31159298, at *2 (8th Cir. Sept. 30, 2002)).

However, pre-filing injunctions against pro se plaintiffs should be approached "with particular caution and should remain very much the exception to the general rule of free access to the courts."  *Cromer v. Kraft Foods N. Am. Inc.*, 390 F.3d 812, 818 (4th Cir. 2004).  The court should be mindful not to place any restrictions on the party that would be "so burdensome as to deny the litigant meaningful access to the courts."  *In re Green*, 669 F.2d 779, 786 (D.C. Cir. 1981).

Although not binding, this Court finds instructive the Second Circuit's list of factors to consider in determining whether a pre-filing injunction is appropriate:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

See *Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986), cited in *Dixon v. Deutsche Bank Nat'l Tr. Co.*, 360 F. App'x 703, 704 (8th Cir. Jan. 13, 2010) (unpublished).

Cassell has a long history of attempting to re-litigate issues he has lost in state family court proceedings. Although the parties named by Cassell have changed at times during his attempts to relitigate matters he lost in state court, the substance and circumstances giving rise to these suits remains the same. Starting in 2005 in Ramsey County up to the present, Jarvis and his co-defendants have been required to litigate this family law matter through several appeals and different state and federal suits. Defendant Erbayne Jarvis seeks sanctions against Cassell because of the burden of defending against these repetitious filings that lack any factual allegations against him or other parties.

Using factors identified by the Second Circuit, this Court considers whether the plaintiff had a good faith basis in his expectation of prevailing. *See Safir*, 792 F.2d at 24. Cassell has attempted to bring an appeal of a state court judgment to

this Court before. *See Cassell v. Cty. of Ramsey*, No. CIV. 10-4981 JRT/TNL, 2012 WL 928242 (D. Minn. Mar. 19, 2012) *aff'd*, 490 F. App'x 842 (8th Cir. 2012). In his earlier suit, Cassell was unsuccessful for the same reasons that he is not victorious here—i.e., he brought claims that were insufficiently pleaded and over which the Court clearly lacked subject matter jurisdiction. *Id.* (granting the defendants' motions to dismiss for failure to state a claim and lack of subject matter jurisdiction). In that earlier suit, the district court issued a detailed decision explaining the lack of merit in Cassell's objection to Ramsey County's jurisdiction over his family court proceeding, which Cassell attempted to undermine through his federal lawsuit. *See id.* at *4.

The Court further explained the federal district court's inability to serve as a reviewing court for state court orders. *Id.* at *4. In 2012, Cassell alleged claims against "State Defendants," "County Defendants," and "Hansen Dordell Defendants."[12] *Id.* at *1. Almost identically here, Cassell sued State Defendants and County Defendants, and sued the Private Party attorneys that represented his wife in the state court proceedings. (*See* Compl. ¶¶ 12–21.) The claims against the parties in both the 2012 suit and the current suit are also nearly identical. In 2012, Cassell alleged 42 U.S.C. § 1983 and state tort claims against the defendants. *Cassell*, 2012 WL 928242 at *1. Again here, Cassell has

---

12 The Hansen Dordell Defendants were private party defendants that provided legal representation to Cassell's ex-wife in proceedings that issued an unfavorable decision against Cassell. Those private party defendants were essentially the precursor to the Private Party Defendants Cassell has named in this lawsuit.

CASE 0:15-cv-02598-PJS-JJK   Document 95   Filed 12/11/15   Page 30 of 34

alleged the same meritless claims. (Compl. ¶¶ 39–53.) Cassell's allegations here seek to undermine a state court order in an identical manner as he attempted, and failed, to do in the 2012 suit. (*See* Doc. No. 1, Pl.'s Compl.) Through the examination of Cassell's failed previous attempt to appeal a state court order to the United States District Court, it is clear that Cassell did not have a good faith expectation of prevailing on the merits of this claim. Having to defend against duplicative lawsuits imposes a burden on the parties who are forced to respond, and such suits also impose an often unnecessary burden on the courts. *See In re Martin-Trigona*, 573 F. Supp. 1237, 1242 (D. Conn. 1983) (noting that an obvious effect of excessive litigation is the unnecessary burden placed on court resources).

In deciding whether a pre-filing injunction is appropriate this Court considers the harassing and duplicative nature of the lawsuits. *See Safir*, 792 F.2d at 24. In the state court decision that Cassell is attempting to appeal to this Court, Cassell was deemed to be a frivolous litigant. (*See* Doc. No. 37, Order Designating Resp't Frivolous Litigant, Ex. 3.) The Minnesota Court of Appeals affirmed that decision. *Cassell v. Cassell*, No. A13-0316, 2013 WL 5420303 (Minn. Ct. App. Sept. 30, 2013). Cassell's harassing conduct in the state court led to his designation as a frivolous litigant, which suggests that Cassell litigates without regard to a reasonable expectation of winning, but for the purpose of harassing other parties. Cassell's Preliminary Injunction in this case also provides evidence of the harassing nature of his claims. Cassell states,

CASE 0:15-cv-02598-PJS-JJK   Document 95   Filed 12/11/15   Page 31 of 34

"[defendants] agreed, as a matter of malicious policy to ignore the indisputable proof of their complete lack of legal authority over Plaintiff." (Doc. No. 3, Pl.'s Mem. in Supp. of Prelim. Inj. 2.) Cassell also states, "[d]efendants have produced absolutely no verifiable evidence of their claims of authority over Plaintiff and his minor child." (*Id.*) As discussed above, this issue was fully litigated in state court and again in federal court in the 2012 suit. *Cassell*, 2012 WL 928242, at *4. By repeating the same flawed arguments here, it is abundantly clear that Cassell will continue to litigate frivolous claims, waste court resources, and harass the defendants he chooses to sue whenever he obtains an unfavorable ruling in state family court proceedings.

Cassell's harassing motive and lack of good-faith expectation that he could prevail on the merits are further underscored by the absence of any factual allegations whatsoever against a number of the defendants he has named. For example, the fact that he fails to identify a single act by any of the Private Party Defendants that would subject them to liability suggests he sued them merely because they crossed his path in the ongoing family court proceedings in Ramsey County District Court and represented someone whose interests were adverse to his during those proceedings.

Cassell's almost ten years of frivolous lawsuits have created burdens on the parties and on the federal court. Therefore, this court concludes that it is appropriate to place some type of restriction on Cassell's ability to commence litigation against these defendants in federal court relating to his state family

31

court proceedings. This Court is mindful that it is important not to place a restriction so burdensome that it would deny Cassell meaningful access to the courts. *See In re Green*, 669 F.2d at 786. Thus, any sanction this Court recommends would only serve to protect the parties and courts from dealing with excessive and frivolous litigation arising from the same, fully litigated, circumstances. Therefore, this Court recommends Cassell be prohibited from filing future lawsuits related to his state family law case in Federal District Court, without first obtaining leave of the court to do so, or by having his future lawsuits signed, pursuant to Fed. R. Civ. P. 11, by an attorney admitted to this court.

## IV. Plaintiff's Motion for Preliminary Injunction

Because Cassell's claims should be dismissed for lack of subject-matter jurisdiction or for failure to state a claim upon which relief can be granted, Cassell's motion for preliminary injunction should be denied.

Further, Cassell has provided absolutely no support for his assertion that the defendants or any of their representatives engaged in illegal or fraudulent conduct, and he is not entitled to the order he seeks. Therefore, this Court recommends Cassell's motion for a preliminary injunction should be denied.

## RECOMMENDATION

For the reasons stated above, **IT IS HEREBY RECOMMENDED** that:

1. The Defendants' Motions to Dismiss (Doc. No. 26, Doc. No. 33, Doc. No. 35, Doc. No. 49, Doc. No. 53) be **GRANTED**;

2. The Defendant's Motion for Judgment on the Pleadings (Doc. No.

32

57) be **GRANTED**;

 3.    The Plaintiff's Motion for Preliminary Injunction (Doc. No. 2) be

**DENIED**;

 4.    Defendant Erbayne Jarvis's Motion for Rule 11 Sanctions (Doc.

No. 74) be **GRANTED** and that Plaintiff be enjoined from filing future lawsuits

relating to his state family court proceedings unless either (a) the pleadings

related to any such lawsuit are signed, pursuant to Fed. R. Civ. P. 11, by an

attorney admitted to this Court or (b) a judicial officer of this District has

authorized the filing of such pleadings in advance; and

 5.    This action be **DISMISSED**.


Date: December 11, 2015

 s/ Jeffrey J. Keyes
JEFFREY J. KEYES
United States Magistrate Judge


## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or
judgment of the District Court and is therefore not appealable directly to the
Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written
objections to a magistrate judge's proposed finding and recommendations within
14 days after being served a copy" of the Report and Recommendation.  A party
may respond to those objections within 14 days after being served a copy of the
objections.  LR 72.2(b)(2).  All objections and responses must comply with the
word or line limits set for in LR 72.2(c).

**Under Advisement Date:**  This Report and Recommendation will be considered
under advisement 14 days from the date of its filing.  If timely objections are filed,
this Report and Recommendation will be considered under advisement from the

earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.